ORIGINAL

FILED
AUG 15 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **NORTHERN STATES POWER COMPANY, d/b/a XCEL ENERGY,** Plaintiff, | |
| v. | No. 07-608 C |
| **THE UNITED STATES,** Defendant. | |

## COMPLAINT

Pursuant to RCFC 7, Plaintiff Northern States Power Company, d/b/a Xcel Energy ("NSP"), by and through the undersigned counsel, alleges as follows:

## NATURE OF THE CASE

1. In 1998 NSP brought a lawsuit against the United States (the "Government") for, *inter alia*, partial material breach of its obligation to begin disposing of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by commercial nuclear power plants owned and operated by NSP. Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) (Wiese, S.J.). The suit claimed past and future damages relating to the breach, and was assigned to Senior Judge John P. Wiese. Subsequently, the U.S. Court of Appeals for Federal Circuit ("Federal Circuit") held in another spent nuclear fuel damages case that, in a suit for partial breach of contract, a plaintiff may recover "damages for nonperformance only to the time of trial and may not recover damages for anticipated future nonperformance." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376 (Fed. Cir. 2005). Pursuant to that decision, costs not yet incurred must be sought in separate actions "as they are incurred." In compliance

with the Indiana Michigan decision, NSP filed an Amended and Supplemental Complaint on January 27, 2006, seeking the recovery of damages only through December 2004. The trial on NSP's claims commenced before Judge Wiese in October 2006, post-trial briefs were filed in early 2007, and final oral arguments were heard on May 31, 2007. The matter is currently under advisement, and a decision has not yet been issued.

2. In accordance with the Indiana Michigan court's instruction to bring separate actions for damages "as they are incurred," NSP brings this lawsuit to recover significant damages incurred during the 30-month period between January 1, 2005 and June 30, 2007 caused by the Government's partial material breach of its unconditional obligation to begin disposing of SNF generated by the commercial nuclear power plants owned by NSP. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 *et seq.* ("NWPA"), the Government and NSP entered into three Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contracts") in 1983 under which NSP has paid and continues to pay substantial fees in return for the Government's obligation to remove and dispose of SNF beginning no later than January 31, 1998. NSP has fully complied with its fee payment obligations under the contracts. The Government, however, has failed to perform its reciprocal obligation to accept and dispose of SNF, and has stated that it will not do so until 2017 at the earliest. NSP has incurred and will continue to incur significant costs associated with procuring additional SNF storage capacity and other damages as a result of the Government's total disregard of its contractual obligations.

**PARTIES**

3. NSP, a wholly owned subsidiary of Xcel Energy Inc., is the owner of the Monticello Nuclear Generating Plant, located in Monticello, Minnesota, for which an operating

license was issued by the Atomic Energy Commission ("AEC") in 1970. NSP also owns the Prairie Island Nuclear Generating Plant, which has two operating units and is located in Red Wing, Minnesota. Operating licenses for these reactor units were issued by the AEC in 1973 and 1974. Both of NSP's nuclear plants have generated and continue to generate SNF, which is stored at the plant sites.

4. Defendant is the United States of America, acting through the U.S. Department of Energy ("DOE").

**JURISDICTION**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1). See PSEG Nuclear, LLC v. United States, 465 F.3d 1343, 1351 (Fed. Cir. 2005).

6. The Government's complete failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998, constitutes a material partial breach of its Standard Contracts with NSP, for which NSP may seek recovery of its damages without exhausting any administrative remedies. In companion decisions handed down on August 31, 2000, the Federal Circuit has conclusively rejected the Government's exhaustion of remedies jurisdictional defense, determined that jurisdiction is proper in this Court, and further concluded that the Government has breached its obligations under the Standard Contracts, "a breach that involved all the utilities that had signed the contract — the entire nuclear electric industry.". See Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000) ("Maine Yankee"); Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States").

7. Furthermore, Article XI of the Standard Contracts state, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the

contract or at law." Pursuant to this provision, NSP is entitled to pursue its legal claims without exhausting any administrative remedies.

## FACTUAL BACKGROUND

### The Standard Contract

8. In 1982, Congress enacted the NWPA, codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of commercial SNF. Pursuant to Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), the Government was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover the Government's costs for disposing of SNF.

9. Pursuant to Section 302 of the NWPA, in 1983 the Government developed the Standard Contract. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which contract holders agree to pay fees into the Nuclear Waste Fund in return for the provision of SNF disposal services by the Government, beginning no later than January 31, 1998. See 10 C.F.R. Part 961.11. Specifically, the Standard Contract provides that "[t]he services to be provided by DOE under this contract shall begin, after commencement of facility obligations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." 10 C.F.R. § 961.11, Art. II.

10. NSP executed its three Standard Contracts with the Government on or about June 20, 1983. To date, NSP has paid more than $360 million into the Nuclear Waste Fund pursuant to these contracts and continues to pay fees of approximately $13 million per year.

**DOE's Breach Of Its Contractual Obligation**

11. The Government did not begin to accept and dispose of SNF by January 31, 1998, as required by the NWPA and Standard Contract, and has consistently extended the earliest time at which expects to begin accepting SNF, such that it does not expect to commence disposal prior to 2017. The Government has failed and refused to provide any firm commencement date for the disposal of NSP's SNF.

12. In the Maine Yankee case decided by the Federal Circuit on August 31, 2000, the Federal Circuit concluded that the Government's admitted failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. In the companion Northern States case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." Northern States, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that the Government breached the contract and that NSP and other similarly-situated utilities that are parties to the Standard Contract can bring an action for breach of contract damages in this Court.

**NATURE OF DAMAGES SUSTAINED BY NSP AS A RESULT OF DOE'S BREACH**

13. As a direct consequence of the Government's disregard of its contractual obligations and defiance of the D.C. Circuit's rulings, NSP has been and will be forced to incur substantial additional costs to provide for extended on-site storage of its SNF. Moreover, NSP has incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants.

14. Between January 1, 2005 and continuing through June 30, 2007, the following transactions, occurrences, and events, *inter alia*, took place as a direct, proximate, and substantial result of the Government's continuing partial breach of NSP's Standard Contracts, continuing breach of the Government's covenant of good faith and fair dealing, and continuing taking of NSP's property without just compensation: NSP continued to incur costs for the licensing, engineering and construction of an on-site dry storage facility at Monticello, as well as the purchase, design and engineering, delivery, and loading of casks at the dry storage facility at Prairie Island. NSP also continued to pay Nuclear Regulatory Commission licensing and inspection fees for the dry storage facility at Prairie Island. Furthermore, NSP incurred costs (1) to develop installations for 110 megawatts of bio-mass generation, (2) to make payments into the Renewable Development Fund, and (3) to make settlement payments to the Prairie Island Indian Community – all of which payments the State of Minnesota mandated as conditions for NSP to obtain a certificate of need to build an on-site dry storage facility at Prairie Island.

15. As a direct, proximate, and substantial result of the Government's continuing partial breach of NSP's Standard Contracts, continuing breach of DOE's covenant of good faith and fair dealing, and continuing taking of NSP's property without just compensation, NSP has incurred substantial damages, in an amount to be determined at trial.

**CLAIMS FOR RELIEF**

**COUNT I**

**(Partial Breach of Contract)**

16. Paragraphs 1 through 15 are incorporated herein by reference as if set forth in full.

17. NSP has complied and continues to comply with all of its obligations under the Standard Contracts, including the payment of all required fees into the Nuclear Waste Fund.

18. The Government has failed to perform its obligation under the Standard Contracts to accept and dispose of SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contracts.

19. As a direct, proximate, and substantial result of the Government's partial breach of the Standard Contracts, NSP has incurred substantial damages, in an amount to be determined at trial.

**COUNT II**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

20. Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth in full.

21. The Standard Contracts between NSP and the Government contain an implied covenant of good faith and fair dealing, pursuant to which the Government has a duty to perform its obligations under the contracts in good faith and not to take actions detrimental to NSP's contractual rights. The Government has breached the covenant of good faith and fair dealing by failing and refusing to make any meaningful effort to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid, minimize, suspend, or delay its obligations under the contracts; by failing to make any effort to accept or dispose of NSP's SNF or even to provide NSP with a firm date on which the Government will begin to do so; and by insisting on NSP's continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund despite the Government's refusal to perform.

22. The Government's failure to act has not been the result of inadequate resources. The Government's annual expenditures from the Nuclear Waste Fund have consistently been well below the level of annual receipts into the Nuclear Waste Fund. The Government's failure

to perform its contractual obligations is the result of its own deliberate decision-making, mismanagement and ineptitude. During the last two decades, in stark contrast to the Government's program, many utilities (including NSP) have been compelled by the Government's failure to perform to design, license, build and operate dry fuel storage installations at locations around the country.

23. In contrast to the Government's failure to take any action to meet its contractual commitments to domestic utilities, the Government has taken action to receive, transport and store SNF from other entities. For example, the Government continues to accept and store SNF from foreign research reactors.

24. As a direct, proximate, and substantial result of the Government's breach of the implied covenant of good faith and fair dealing, NSP has suffered and will continue to suffer damages as alleged above.

**COUNT III**

**(Taking Without Just Compensation)**

25. Paragraphs 1 through 24 are incorporated herein by reference as if set forth in full.

26. The Government was and is unequivocally obligated under the Standard Contracts to commence acceptance and disposal of NSP's SNF no later than January 31, 1998. By fully complying with its obligations under the Standard Contracts, NSP obtained a vested contract right to have the Government dispose of NSP's SNF in accordance with the terms of the contract.

27. The Government's failure and refusal to comply with the requirements of the Standard Contract for acceptance and disposal of NSP's SNF constitutes a taking of NSP's vested contract rights. In addition, the Government's failure to honor its commitments under the

Standard Contract will prevent NSP from being able to decommission its nuclear plant sites and devote those sites to other commercial uses as soon as it otherwise would have been able to do so. The Government's conduct has deprived, and will continue to deprive, NSP of the full valuable economic use of those sites, as well as the real property on which the SNF is stored and from which it cannot be removed.

28. NSP is entitled to just compensation for this taking of NSP's vested contract rights and this taking of NSP's real property in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Northern States Power Company respectfully requests that the Court enter judgment in its favor and against the United States as follows:

(a) On Count I, for damages in an amount to be determined at trial;

(b) On Count II, for damages in an amount to be determined at trial;

(c) On Count III, for damages in an amount to be determined at trial;

(d) Pre-judgment and post-judgment interest as permitted by law;

(e) Costs of suit, including reasonable attorneys' fees as permitted by law; and

(f) Such other and further relief as this Court may deem proper.

Dated: August 15, 2007

Respectfully submitted,

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Northern States Power Company

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

Kerry C. Koep
**XCEL ENERGY**
414 Nicollet Mall
Minneapolis, Minnesota 55401
Northern States Power Company
(612) 215-4583
(612) 215-4544 (fax)