IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHERN STATES POWER COMPANY, d/b/a XCEL ENERGY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-608C |
| | ) | (Judge Wiese) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STAY

Pursuant to Rule 7(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court stay all proceedings in this matter, including, but not limited to, defendant's obligations to respond to the complaint, until resolution of the appeals in Yankee Atomic Electric Co. v. United States, No. 07-5025 (Fed. Cir.) ("Yankee Atomic"), Sacramento Municipal Utility District v. United States, No. 07-5052 (Fed. Cir.) ("SMUD"), Pacific Gas & Electric Co. v. United States, Nos. 07-5046 (Fed. Cir.) ("PG&E"), Nebraska Public Power District v. United States, No. 2007-5083 (Fed. Cir.) ("NPPD"), and any potential appeal of Northern States Power Company v. United States, No. 98-484C (Fed. Cl. Sept. 26, 2007) ("NSP I"). Issues that are raised by the plaintiff in this case ("NSP II") are being addressed in each of these appeals, and it would be inefficient and potentially unjust to allow matters to proceed in this case while those same issues are being resolved by the United States Court of Appeals for the Federal Circuit.

Plaintiff's counsel has represented that plaintiff does not consent to any stay of the proceedings in this matter.

BACKGROUND

This case is one of a number of cases that have been filed in this Court regarding the Government's delay in beginning acceptance of spent nuclear fuel ("SNF") pursuant to the Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). The Standard Contract that was signed by all the SNF plaintiffs are essentially identical, raising the same issues relating to the rate and schedule of acceptance in each case. Most of the SNF plaintiffs are seeking damages for their additional costs of storing SNF because of DOE's failure to begin acceptance pursuant to the Standard Contract.

Beginning in October 2006, the trial court conducted a 18-day trial in NSP I, considering plaintiff's claims for damages that had accrued through December 31, 2004. On September 26, 2007, the Court issued an opinion awarding NSP $116,485,000 in damages. The Court denied our motion for reconsideration on December 12, 2007. The damage award included approximately $44 million related to the construction and loading of on-site dry waste storage facilities at NSP's two nuclear power plants, approximately $49 million related to NSP's payment of fees pursuant to a series of "mandates" enacted by the Minnesota legislature as a condition to permitting NSP to construct these facilities, and approximately $25 million related to NSP's investment in a private limited liability company known as Private Fuel Storage, LLC ("PFS") created by a consortium of utilities to store spent fuel at a site other than a Federal facility.

NSP filed its complaint in NSP II on August 14, 2007, seeking damages incurred after December 31, 2004. In so doing, it became the first SNF plaintiff to file a lawsuit in this Court seeking damages incurred after the period covered by its initial lawsuit.

The Court's opinion in NSP I did not reach two issues of great significance to future spent nuclear fuel litigation, including this case. First, despite our requests that it do so, the Court deemed it unnecessary to identify the minimum rate of acceptance of spent fuel that the Standard Contract requires. In addition, we did not raise (and could not raise because of a writ of mandamus issued by the United States Court of Appeals for the District of Columbia Circuit) as a potential defense to plaintiff's claims the applicability of the "Unavoidable Delays" clause of the Standard Contract. This clause, by its terms, excuses the Government from liability for delayed performance based upon the circumstances beyond its control identified in that clause.

Many of the issues implicated by plaintiff's complaint in NSP II are already before the Federal Circuit. In Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 674 (2006), appeal pending, No. 2007-5083 (Fed. Cir.), this Court ruled that the writ of mandamus preventing the Government from relying upon the "Unavoidable Delays" clause of the Standard Contract was void ab initio because court that issued it lacked jurisdiction to do so. The Federal Circuit granted the plaintiff's petition in Nebraska for permission to appeal that interlocutory decision, and the briefing in that case has been completed. Oral argument was held on December 3, 2007.

In addition, briefing has been completed and oral argument has been scheduled for February 4, 2008, before the same panel in the appeals of PG&E, Yankee Atomic, and SMUD. These appeals are expected to resolve (or, at a minimum, address critical questions related to) the

following issues implicated by the complaint in NSP II: (1) the rate of acceptance of spent fuel required by the Standard Contract and the necessity of resolving that issue in evaluating damages claims; (2) the allocation of the burden, in an expectation damages case, to establish a world in which there would be performance and whether the "substantial causal factor" test obviates the need to establish such a world; and (3) the standard for the recoverability of company expenditures, such as internal labor and overhead costs, that the Government contends would have been incurred in the absence of a breach.

The Government is also currently considering whether to appeal the Court's decision in NSP I. A notice of appeal is currently due on or before February 10, 2007. If filed, this appeal could implicate, in addition to the issues specified above, several of the components of damages that we expect NSP to seek in this case, including, but not limited to, (1) the recoverability of costs incurred by NSP as a result of mandates imposed by the Minnesota legislature; (2) the circumstances under which any award of damages to which a spent nuclear fuel plaintiff is entitled should be reduced by the costs that plaintiff would incur to load fuel to the Department of Energy; and (3) the recoverability of plaintiff's investment in PFS.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS CASE PENDING FINAL RESOLUTION BY THE FEDERAL CIRCUIT OF ISSUES DIRECTLY RELEVANT TO THIS CASE

#### A. The Standard For Considering A Stay

This Court has the inherent power to stay proceedings, and may do so with the "exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 255 (1936). The Court applies a three-part test in deciding a motion to stay one proceeding pending the resolution of a separate proceeding. A stay is proper

if: (1) the cases involve "substantially similar" or "related issues"; (2) the requesting party will suffer hardship or inequity if required to go forward; and (3) the requested stay is not of immoderate duration. C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255). The circumstances presented by this case readily satisfy each of the criteria and, therefore, merit the entry of a stay during the pendency of the appeals in NPPD, PG&E, Yankee Atomic, SMUD, and any appeal in NSP I.

B. A Stay Is Appropriate At This Time

1. This Matter Is Closely Related To The Existing And Potential Appeals To The Federal Circuit

There can be no serious dispute that the appeals to the Federal Circuit pending which we seek to stay this case are closely related to NSP II. As an initial matter, any appeal of the Court's decision in NSP I would likely raise many of the same issues that will necessarily arise again in NSP II, including the recoverability of the cost of complying with the mandates imposed by the Minnesota legislature, the standard for proving that company expenditures were incremental to the breach, and the means of accounting for loading costs that NSP has avoided as a result of DOE's partial breach. It defies common sense to reach these issues in NSP II when the identical issues are likely to be resolved by the Federal Circuit on appeal. The Federal Circuit's determination with respect to these issues will be binding upon this Court, and there is no reason to require the parties either to relitigate these issues anew or to proceed under a set of assumptions that may be undermined on appeal. Either scenario could result in a waste of the parties' and the Court's scare resources.

Moreover, the issues raised in the appeals already before the Federal Circuit are closely intertwined with those raised in NSP II. As the Court is aware, the terms of all of the Standard

Contracts were promulgated in the same manner through notice-and-comment rulemaking, and the interactions between DOE and the nuclear industry as a whole led to the promulgation of the contract. As a result, any determinations about the rate of acceptance required by the Standard Contract will be of direct significance to the course of the proceedings and the calculation of damages, if any, in NSP II. See Restatement (Second) of Contracts § 211 (1981) (standardized contracts are to be interpreted and applied in same manner for all contract parties, regardless of individual contract holder's understanding or knowledge). Indeed, we expect that the calculation of damages in NSP II will vary depending in part upon the identification of the minimum rate of acceptance required by the Standard Contract, an issue that we expect the Federal Circuit to address in resolving the appeals in PG&E, SMUD, and Yankee Atomic. Similarly, any rulings by the Federal Circuit about the availability of a defense based upon the "Unavoidable Delays" clause of the Standard Contract (as well as the contours of such a defense) will assist in determining whether (and how) such a defense can be raised in NSP II.

Finally, the appeals are likely to resolve the issues (repeatedly raised, as the Court will recall, during the trial of NSP I) of whether and how a plaintiff must determine a "but for" world as a means of providing a baseline against which to compare the costs incurred by plaintiff in the actual world and, ultimately, to calculate the amount of damages. The Federal Circuit's treatment of these issues will directly influence the manner in which the parties conduct discovery and present evidence in NSP II.

2. Absent A Stay, The Government Will Incur Substantial Hardship

The situation presented in this matter amply supports a finding that the Government would suffer great hardship if our motion for a stay were to be denied.

First, fundamental fairness demands consistency in the resolution of cases with the same operative facts. See Restatement (Second) of Contracts § 211 (1981). Without a stay, there is a substantial likelihood that there will be inconsistent rulings relating to the terms of the Standard Contract, the burden of proof required by a spent nuclear fuel plaintiff seeking to establish its entitlement to damages, and the types of damage to which such a plaintiff is entitled. At a minimum, there is substantial likelihood that the parties will incur unnecessary expenses litigating NSP II in a manner that is inconsistent with the interpretation of the Standard Contract and the identification of the burden of proof that the Federal Circuit adopts in the SNF cases that are currently before it. Respect for the sanctity of the appeals process and for the scarcity of judicial resources compels the conclusion that NSP II should be stayed until the Federal Circuit determines whether the Court applied the proper framework for measuring damages in NSP I and the other SNF cases currently on appeal.

Second, because of the writ of mandamus issued by the District of Columbia Circuit, the Government has to date been denied the opportunity to assert a defense under the "Unavoidable Delays" clause, which, if deemed applicable, would on its face provide a complete defense to liability for NSP's claims. Requiring this case to move proceed before the availability of this defense has been addressed by the Federal Circuit in NPPD would further deprive the Government of the opportunity to assert a right for which it bargained when the parties agreed to the Standard Contract. Although we are sensitive to plaintiff's concern that it will incur a hardship if a stay is imposed because it cannot recover prejudgment interest against the Government, NSP has already obtained a judgment of in excess of $116 million in NSP I in a case in which the Government could not rely upon the "Unavoidable Delays" clause and thus was

restricted in its ability to defend itself. The amount of prejudgment interest that NSP would forego if a stay issues pales in comparison to the hardship that the Government has already incurred and will incur in the future as a result of judgments entered before its ability to assert a defense based upon the "Unavoidable Delays" clause has been adjudicated.[1]

3. The Requested Stay Is Of A Reasonable Duration

The final determination that the Court must make in deciding whether to grant a stay is whether the requested stay will be of a reasonable duration.

We do not presume to estimate the length of time that the stay we are seeking will last. However, granting a stay until resolution of the appeals is reasonable for much the same reason that granting a stay in this case is equitable. The purpose of the stay is to obtain guidance as to the proper resolution of the issues in every SNF case. It is in every party's interest for the cases that have already been developed and adjudicated to be reviewed by the Federal Circuit, thereby providing guidance and permitting a more efficient resolution of the other cases, including NSP II. Therefore, waiting a relatively short period of time to receive that guidance based upon final resolution of the appeals of NPPD, PG&E, Yankee Atomic, SMUD, and NSP I (if any) is reasonable.

CONCLUSION

For these reasons, we respectfully request that the Court enter an order granting this motion to stay all proceedings in this matter until the Federal Circuit issues opinions resolving

[1] In our post-trial brief in NSP I, we expressly reserved the right to challenge any determination of liability with respect to the Standard Contract if the writ of mandamus is lifted or otherwise deemed inapplicable. But see Southern Nuclear Operating Co. v. United States, 77 Fed. Cl. 396, 459 (2007) (concluding that the defense has been waived), appeal pending.

the appeals of NPPD, PG&E, Yankee Atomic, SMUD, and NSP I (if any). If the Court declines to issue a stay, we respectfully request that the Court enlarge the time to answer the complaint in this action to a date 14 days after the date of the order denying our motion.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 353-0527
Fax. (202) 305-7643
Attorneys for Defendant

January 4, 2008

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of January, 2008, a copy of "DEFENDANT'S MOTION FOR A STAY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Andrew P. Averbach